## MILWAUKEE MECHANICS' INS. CO. et al. v. SEWELL et al.

No. 6040—Opinion Filed Oct. 17, 1916.

Rehearing Denied Nov. 6, 1917.

(168 Pac. 660.)

1. **Pleading—Action on Fire Policy—Failure to Plead Waiver—Cure by Adversary's Pleading.**

In an action on a policy of insurance, where the defendants pleaded facts amounting to a waiver of a condition in the policy, a failure of the plaintiff to plead such waiver is cured.

2. **Insurance—Fire Insurance — Waiver of Proof of Loss — Pleadings and Admissions.**

Where a plaintiff in his petition sets up policies of insurance as the basis of his suit and alleges compliance with the conditions of the same; that an arbitration had been had and an award made, the amount of which had been tendered to and refused by him; that the appraisers, after determining the sound value, without authority and by mistake. deducted therefrom one-fourth of the same as provided and stipulated for under the three-fourths value clause of the policies, and set the same down under the head of "sound value" and "loss" in the award; and the answer admits the issuance of the policies, the destruction of the property by fire, the execution of the appraised agreement and the return of the award, and after deducting one-fourth of the sound value as shown by the award and provided for by the policies tendering the same to the plaintiff, and then tenders the same into court in full discharge of the liability of said companies under the terms of the policies and the award—held, that the admission of such liability and of such facts amount to a waiver of the conditions of the policies, requiring proof of loss to be filed with the companies within 60 days from and after the date of the fire.

(Syllabus by Brunson, C.)

Error from Superior Court, Custer County; J. W. Lawter, Judge.

Action by R. N. Sewell against the Milwaukee Mechanics' Insurance Company and others, to recover on fire insurance policies, J. C. Pyle, interpleader, asking judgment against plaintiff. Judgment for plaintiff, and defendants bring error. Affirmed.

Scothorn, Caldwell & McRill, for plaintiffs in error.

George T. Webster, for defendants in error.

Opinion by BRUNSON, C. This action was for the recovery of a loss upon eight fire insurance policies issued upon a hotel and the furniture and fixtures therein contained; the amount of the insurance being $8,500. The policies contained an arbitration clause. A fire occurred on the 1st day of January, A. D. 1913, totally destroying the property covered by said policies, the companies acting by and through the Bates Adjustment Company of Oklahoma. City, and the insured were not able to agree on the amount of the loss, and an instrument entitled "Submission to Appraisements," was executed by said companies and the insured, and appraisers were chosen, one being named by the companies and one by the insured, and they selecting an umpire. An award was made, signed by the appraisers and the umpire. The terms of the respective policies involved in this suit are identical. Some of the provisions of the appraisal agreement read as follows:

"It is expressly understood that this appraisement is for the purpose of ascertaining and fixing the amount of sound value and loss and damage only to the property hereinafter described, and shall not deter-

mine, however, or invalidate any other right or rights of either party. * * *

"It is further expressly understood and agreed that in determining the sound value and the loss or damage upon the property hereinbefore mentioned, the said appraisers are to make an estimate of the actual cash cost of replacement or repairing the same, or the actual cash value thereof at and immediately preceding the time of the fire. And in case of depreciation of the property of use, age, condition and location or otherwise a proper deduction shall be made therefor."

On the 15th day of February, A. D. 1913, the appraisers made their award fixing the sound value and loss as follows:

|  | Sound Value. | Loss. |
|---|---|---|
| Item 1: Two-story frame building | $5,804.50 | $5,804.50 |
| Item 2: Contents and fixtures | 2073.50 | 2,073.50 |
| Total sound value and loss | 7,978.00 | 7,978.00 |

The award was delivered to the Bates Adjustment Company, and on the 17th day of February, A. D. 1913, it wrote the insured a letter, inclosing to him proofs of loss, receipts, etc., in the several companies, and asked him to sign the same according to instructions given in the letter, and advised him that the appraisers had fixed the sound cash value of the property at $7,978, and, after deducting therefrom $1,994.50, or one-fourth of the same under the three-fourths value clause, the companies were liable to him in the sum of $5,980.50. The letter also advised him that upon the return of the papers properly executed they would be forwarded to the companies for payment. He refused to accept said amount in settlement of his loss, because the appraisers and the umpire did not understand the form, or meaning of the form, submitted to them by the adjustment company and upon which they made their award; that they believed they were estimating the net loss to be paid to him; that after they found the sound cash value of the property, they deducted one-fourth of the same therefrom under the three-fourths value clause of the policies, and that it was their intention that he should receive from the companies the full sum of $7,978. He immediately responded to said letter, by calling the adjustment company on the phone and making his contention known to it, and within a few days he went to Oklahoma City and carried with him J. W. Scott, one of the appraisers, and Chas. E. Sockler, the umpire, and they submitted themselves to said adjustment company in order that it might investigate the mistake, alleged to have been made, and at the same time he filed with it affidavits of said appraiser and umpire, showing that a mistake was made in filling up the blanks in the matter of the award. The affidavits show that deduction was made under the three-fourths value clause of the policies, and that after so doing it left $7,978 net to be paid by the company to the insured, but the adjustment company refused to make settlement, except on the figures as shown by the award after making deductions under the three-fourths value clause. No agreement could be reached as to the loss, and this suit was filed on the 26th day of April, A. D. 1913, and on the 11th day of the same month an amended petition was filed setting up eight different causes of action, all of the eight insurance companies being sued in one action; the causes of action are all identical with the exception of dates and amounts of the policies.

Among other things, it is alleged in the petition that there was an appraisal of the loss and an award made, and the award is attached to the petition and made a part of it. It is alleged that the appraisers did not understand the form of the blank upon which they made their award; that after making proper deductions for depreciation of the property, they agreed on the amount of the award, and then by a mistake of fact, deducted therefrom one-fourth of the same under the three-fourths value clause in the policies, which left the sum of $7.978 net to be paid to the insured. And judgment is demanded for the value of the loss. After a demurrer to the petition was overruled the insurance companies filed a joint answer, and admitted the issuance of the several policies of insurance covering the hotel and contents, all in the manner and form as set out in the petition; admitted the destruction of the hotel and contents by fire and the disagreement as to the amount of the loss and damages sustained by the insured as the result of the fire; admitted the execution of the appraisal agreement; that an award was made in compliance therewith; but alleged that by reason of the three-fourths value clause contained in each policy the total liability of the companies to the insured by virtue of said award was and is three-fourths of $7,978 or the total of $5,983.50 and that, the award having been made and returned by the appraisers and the umpire, the notice thereof having been given to the insurance companies, they and each of them offered to pay their respective pro rata portion of the same in the sum of $5.983.50. but that the insured at all times refused to accept it.

The companies, further answering, allege and state that they have, at all times since the coming in of said award, held themselves ready, able, and willing to pay the same and they tendered into court for the use and benefit of the insured, in full discharge and satisfaction of their liability on said several fire insurance policies and said award, the sum of $5,980.50, the same being three-fourths of the amount of the award. And in the prayer of said answer it is asked that the insured be permitted to take nothing by reason of said action, and that the companies be permitted to make payment into court according to their offer, and that they have judgment for their cost, etc.

The insured in his reply denied each and every fact in the answer which constituted or is intended as an affirmative defense.

A jury was waived, and a trial was had to the court upon both the law and facts. It made findings of fact and rendered judgment against the companies in the sum of $7,978. A motion for a new trial was filed, exceptions saved, and the case is here on appeal. The court found as a matter of fact that the property covered by said insurance policies was totally destroyed by fire, and that the insured duly notified said companies of the loss of said property by fire, and the companies, through the Bates Adjustment Company, their agent, investigated the loss; that said adjustment company and the insured could not agree as to the amount of the loss, and the appraisal agreement was entered into in order to determine the sound value and loss of the property; that an award was made and signed by the appraisers and the umpire and returned to said insurance companies, and that on the 17th day of February, A. D. 1913, the Bates Adjustment Company mailed to the insured at Erick, Okla., certain proofs of loss, settlement sheets, and receipts for him to sign and return to it, calculating and setting forth the respective sums that each of the insurance companies should pay the insured, the same being predicated upon the award of the appraisers, after deducting from the $7,978 as sound value one-fourth thereof under the three-fourths value clause; that immediately upon receipt of said estimate sheets, etc., the insured protested against this calculation and settlement, and notified said companies through their agent, Bates Adjustment Company, that the correct amount he should receive was $7,978, and immediately thereafter produced before said Bates Adjustment Company, J. W. Scott, one of the appraisers and Chas. E. Sockler, umpire, who then and there declared to the said Bates Adjustment Company that they understood said appraisement to mean the sum of $7,-978 should be net to the insured, and that in making their award they took into consideration the depreciation of the property and the three-fourths value clause contained in the several policies, and had deducted one-fourth of the loss, and that the sum of $7,978 was intended to be net to the insured.

The seventh finding of fact was as follows:

"Seventh. There was some conflict of evidence on the subject of the mistake upon the sum of $7,978 as to whether it was intended to mean the net sum to R. N. Sewell or whether it was intended to mean in sound value of the property without deducting therefrom the one-fourth that said R. N. Sewell contracted to stand under said policies, but the court finds that the decided weight of testimony was in favor of R. N. Sewell; that there was a mistake of fact between the appraiser and umpire as to what was meant, in this, that the umpire, Chas. E. Sockler and the appraiser J. W. Scott each understood that said sum was intended to mean the net amount that R. N. Sewell should receive from the defendants as compensation to him on account of loss of fire, the same to be divided among the different defendants pro rata according to the amounts as shown in said policies; that the findings of the appraisers and umpire were correct as to sound value and loss, and the mistake was made in deducting from the sound value one-fourth, thus reducing the sound value from $10,637.33 to $7,978."

The tenth, eleventh, and twelfth findings of fact are as follows:

"Tenth. The court further finds that there was a mistake of fact relative to the sound value, and that the two appraisers and the umpire did not understand the appraisement alike, and for this reason said appraisement was not the joint mental act of said appraisers and umpire."

"Eleventh. The court further finds that all the evidence that the sound value of the property destroyed and described in said insurance policies was on January 1, 1913, the sum of $10,637.33, and that the total loss by fire on said date was $10,637.33."

"Twelfth. The court further finds that the three-fourths of the total sound value was and is $7,978."

Judgment was then rendered by the court against said companies in the sum of $7,978, the same being three-fourths of the sound value of the property described in said policies and destroyed by fire.

There are 27 assignments of error. It is not necessary to discuss each one of them separately, as they present the following propositions: (1) Did the court err in overruling the demurrer to the amended petition? (2) Did the court err in admitting evidence to impeach the award as to the mistakes of fact as charged in the petition? (3) Did the court err in his findings of fact and conclusions of law?

It is contended that the award is conclusive and that it is fortified by every presumption of regularity, and that there is nothing in the appraisal agreement to warrant the appraisers in believing that any other question except the sound value and loss were to be considered by them; that the award in itself does not show that they considered, or attempted to consider, outside matters, but that the appraisal agreement clearly shows on its face that the appraisers acted strictly within the terms of the agreement, and that the award cannot be attacked for matters aliunde, and that unless the award shows on its face that the appraisers did consider outside matters, the demurrers to the petition should be sustained. We think, and so hold, that when the petition alleges mistake of fact on the part of the appraisers in making their award, it states a cause of action and is good against a demurrer.

In 3 Cyc. p. 738, we find the following language:

"Whenever in a proper proceeding it is made plainly to appear, either by the face of the award or properly by matter extrinsic thereto, that the arbitrators have fallen into such error either of fact or of law, as will make the award operate prejudicially against the complaining party as to a material matter in a manner in which they manifes'ly did not intend it to operate, the award will not conclude the parties as to such matter, and if the entire award is so infected by such mistake, or if the inoperative portion be not clearly severable from the remainder, it will be void in toto."

"It has also been held that such mistakes must appear on the face of the award or by documents properly a part thereof, as otherwise it cannot be ascertained that the intention of the arbitrators has miscarried, unless the mistake is admitted by the arbitrators."

"A mistake that the arbitrators must admit as having resulted in a miscarriage of their intentions in the conclusion at which they arrived, has been held to be the test as to what constitutes voidable mistake."

In the case of Ross v. German Alliance Insurance Co., 86 Kan. 145, 119 Pac. 366,

Ann. Cas. 1913B, 1045, where an award was set aside and judgment rendered for the correct amount, the court said:

"An award of arbitrators can be set aside upon the ground of mistake only upon being shown that the mistake was made by them upon their own theory."

In the case of Commercial Union Assurance Co. of London, England, v. David B. Parker et al., 119 Ill. App. 126, it is said:

"In this state courts of equity will set aside awards, not only for fraud, and for corrupt practices on the part of the arbitrators or parties, but for mistake, or willful misconduct of the arbitrators."

In view of these authorities, we think the court did not err in overruling the demurrer.

It is next contended that the insured cannot recover because his evidence failed to show proof of loss was made and filed with the companies within 60 days after the fire, according to the terms and conditions in the policies, and that a waiver of proof of loss was not set up or pleaded in the petition. However, it appears clear to us that the companies in their joint answer pleaded facts which amount to a waiver of the stipulation and conditions in the policies in respect of making and filing proofs of loss within 60 days, and that the failure of the insured to prove that a proof of loss was made within said time is cured. Walker v. German Ins. Co. of Freeport, 51 Kan. 725, 33 Pac. 597; Mrs. A. K. Ross & Co. v. German Alliance Ins. Co., 86 Kan. 145, 119 Pac. 366; Ross v. Phœnix Ins. Co., 84 Kan. 572, 113 Pac. 1054; Commercial Union Assurance Co. v. David B. Parker, 119 Ill. App. 126; Wm. Funk v. Fire Association of Philadelphia, 157 Ill. App. 602; Caledonian Ins. Co. v. Cooke, 101 Ky. 412, 41 S. W. 279; German Ins. Co. of Freeport v. Gibbs, Wilson & Co., 42 Tex. Civ. App. 407, 92 S. W. 1068. 96 S. W. 760; Caledonian Fire Ins. Co. of Scotland v. Traub, 86 Md. 86, 37 Atl. 782; Carroll v. Girard Fire Ins. Co. of Philadelphia, 72 Cal. 297, 13 Pac. 863; McCollough v. Home Ins. Co. of New York, 155 Cal. 659, 102 Pac. 814, 18 Ann. Cas. 862; Winchester v. North British & Mercantile Ins. Co. of London, England, 160 Cal. 6, 116 Pac. 63. 35 L. R. A. (N. S.) 404.

In Commercial Union Assurance Co. v. David B. Parker, supra, in the fourth paragraph of the syllabus, it is said:

"Where the company joins in an arbitration and sets up an appeal by way of defense, it thereby waives the policy provisions with respect to proofs of loss."

In the case of Wm. Funk v. Fire Association of Philadelphia, supra, in the second paragraph, it is said:

"Submitting the question of the amount of the loss to arbitration waives the requirements of the policy regarding proofs of loss, and this is true where an award is set up as a defense, although the policy stipulates that no provision shall be waived except by written indorsement."

In the case of Caledonian Insurance Co. v. Cooke, supra, in the second paragraph, it is said:

"An admission by the insurer of some liability, and an arbitration as to value, are a waiver of proofs of loss."

In this case the insurance company in its answer admitted a liability, that an appraisal agreement was entered into and an award made, and that the same was binding, and fixed the amount of its liability to the insured, but it also pleaded that by the terms of the policy proofs of loss were to be furnished within 60 days from date of fire, and that no proofs were furnished within that time, and that for this reason no recovery could be had, and in the body of the opinion the court uses this language:

"In this case the insurer (appellant) by its answer admits its liability as to some amount and pleads an arbitration as to the value, which it pleads to be absolute and binding on the question of valuation. If a denial of liability will waive proof of loss, it certainly seems to us that an admission of some liability and an arbitration as to value will waive proofs of loss for a much stronger reason."

In the case of Commercial Union Assurance Co. v. David B. Parker, supra, the plaintiff brought suit on a certain insurance policy that had been issued by the company, and also to set aside an award that had been made under the terms of the policy, alleging liability on account of loss by fire, and that he had complied with all the conditions of the policy. The company answered and admitted the issuance of the policy and the loss, but alleged that the amount of the loss had been fixed by an award made in compliance with the policy.

It is also contended that there is no evidence showing when, if ever, proof of loss was made. The company offered to pay the amount of the award, but the plaintiff was dissatisfied with it, and refused to accept it. In the body of the opinion, the court used this language:

"Where a company joins in an arbitration and sets up an award as a defense, it thereby waives the policy provisions regarding proofs of loss even though the policy stipulates that no provision therein shall be waived except by written indorsement."

In the case of Carroll v. Girard Fire Insurance Company, 72 Cal. 300, it is held, that by going on and completing an award under the terms of the fire insurance policy and setting it up as a defense, the company waived the preliminary steps as to proof of loss as to it being filed within 60 days after the fire under the terms of the policy.

In view of these authorities, it is clear to our minds that the insurance companies, by the admission in their answer of the issuance of the several policies of insurance covering the hotel and contents, the destruction of the same by fire, the subsequent disagreement as to the amount of loss and damages sustained by reason of said fire, and the entering into the appraisal agreement in accordance with the terms of the several policies, with the award duly made in compliance with said agreement by the appraisers and umpire, determining the sound value and loss of the hotel building and the contents thereof, the total sound value being fixed at $7,978, and the tendering of three-fourths of this amount under the three-fourths value clause of these policies into court for the use and benefit of the insured in full discharge and satisfaction of the several fire insurance policies and said award, thereby admitting liability, have waived the condition of the policies requiring proof of loss to be made and filed within 60 days from the date of the fire.

Upon a careful examination of the record we cannot say that the finding of the trial court against the sufficiency of the award is not sustained by competent and positive evidence; although there was evidence to the contrary, the finding of the court must prevail. The weight of the evidence was for the trial court to determine. Ross v. German Alliance Insurance Co., 86 Kan. 145, 119 Pac. 366, Ann. Cas. 1913B, 1045.

Neither the record nor the briefs in this case present any question for decision in reference to the rights of J. C. Pyle.

Finding no error in the record, the judgment of trial court is affirmed.

By the Court: It is so ordered.